S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**STEVEN T. MYGRANT, OSB #03129**
Special Assistant United States Attorney
stevenmyg@co.clackamas.or.us
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 655-8431
Facsimile:  (503) 727-1117
Attorneys for United States of America

<br>

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3: 11-CR-00407-MO** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ALFREDO MARTINEZ ARROYO,** | |
| **Defendant.** | **Sentencing Date: September 10, 2012, at 11:30 a.m.** |

The United States of America, by S. Amanda Marshall, United States Attorney for the

District of Oregon, and Steven T. Mygrant, Special Assistant United States Attorney, hereby

submits the following sentencing memorandum

### I.    GOVERNMENT'S SENTENCING RECOMMENDATION

For the reasons set forth below, the government recommends that the Court impose a

sentence of 108 months' imprisonment, a five year term of supervised release and a $100 fee

assessment. Such a sentence properly addresses the nature and seriousness of the offense, provides

just punishment, affords adequate deterrence and protects the public from further crimes of this

defendant.

## II.    PROCEDURAL HISTORY

Oregon State Police arrested the defendant on October 8, 2011 after seizing approximately 3.6 pounds of methamphetamine from the defendant's vehicle.   Due to the large quantity of methamphetamine, the government immediately prepared a complaint and arrest warrant.   A grand jury subsequently indicted the defendant on Possession with Intent to Distribute Methamphetamine, pursuant to 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A).

On May 15, 2012, the defendant appeared before the Honorable Judge Michael Mosman. At that time, the defendant entered a guilty plea to the sole charge in the indictment.   Judge Mosman ordered a Presentence Investigation Report (PSR), which was finalized on August 30, 2011.  The Court scheduled sentencing for September 10, 2012.

## III.    FACTUAL BACKGROUND

On October 8, 2011, Oregon State Senior Trooper Kaipo Raiser initiated a traffic stop for speeding involving a Jeep Liberty on I-84, near the Dalles.  PSR ¶ 9.   Raiser identified the sole occupant and driver as the defendant, Alfredo Martinez Arroyo.   PSR ¶ 9.   Trooper Raiser identified himself to the defendant and explained he stopped the vehicle for speeding.   PSR ¶ 9. During the course of the traffic stop, Trooper Raiser noticed a number of suspicious criminal indicators.   PSR ¶ 10.

Trooper Raiser subsequently questioned the defendant about the nature and length of his trip to Pasco, Washington.   PSR ¶ 10.   The defendant provided a number of inconsistencies about his residence and his destination in the Tri-Cities area.   PSR ¶ 10.   Raiser pointed out a number of the inconsistencies to the defendant about the nature of his trip, his destination and his lack of luggage for a multi-night stay in Washington.   PSR ¶ 10.   Raiser then asked the defendant for consent to search the vehicle.   The defendant declined consent to search the vehicle.   PSR ¶ 10.

**Government's Sentencing Memorandum**                                                                                  **Page 2**

Raiser subsequently obtained his narcotics-trained canine from his police vehicle to conduct an exterior sniff of the vehicle while the defendant attempted to locate insurance documents for the vehicle.   PSR ¶ 11.   The canine alerted to the presence of narcotics during the exterior search of the vehicle.   PSR ¶ 11.   Raiser then conducted a warrantless search of the interior of the vehicle pursuant to the mobile automobile exception.   PSR ¶ 11.

Raiser's narcotics-detecting canine subsequently alerted to numerous areas within the vehicle.   PSR ¶11.   Raiser then personally searched the areas of the vehicle where the canine alerted.   PSR ¶ 11.   Raiser discovered a modified trap designed for carrying contraband on the rear driver-side portion of the vehicle.   PSR ¶ 11.   Raiser searched the trap, which was empty. He then searched a Hollister brand bag located on the rear passenger side floorboard.   PSR ¶ 11. Inside the Hollister bag, Raiser found approximately 3.6 pounds (1,645 grams) of a mixture containing a detectable amount of methamphetamine.   PSR ¶ 11.   Subsequent analysis by the Oregon State Crime Lab revealed 1,472 grams of actual methamphetamine. PSR ¶ 11.

Raiser arrested the defendant and questioned him about the large quantity of methamphetamine found in the vehicle.   PSR ¶ 12.   The defendant minimized his knowledge of the methamphetamine seized from his vehicle.   He acknowledged he was to be paid $1,000 to transport a "very expensive gift" from Kennewick, Washington to Portland, Oregon.   PSR ¶ 12. The defendant denied actual knowledge of the methamphetamine, but stated he was aware that the person who gave him the bag was involved in narcotics trafficking and he had been introduced to this drug trafficker by a friend in Mexico, who was also a drug dealer.   PSR ¶ 12.

## IV.    SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing.   *United States v. Booker*, 543 U.S. 220, 125 S. Ct.

**Government's Sentencing Memorandum**                                                **Page 3**

738, 767 (2005).   Even though the Guidelines are advisory, they remain influential in an effort to ensure national consistency.   *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark" for sentencing); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the Guidelines is statutory.").

After the parties are given a chance to argue for a sentence they believe is appropriate, the Court should consider the § 3553(a) factors and decide if they support the sentence suggested by the parties.   *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (citing *Gall,* 128 S. Ct. at 596-97, n.6).   The Court must make an individualized determination based on the facts, may not presume that the Guideline range is reasonable, and should not give the Guidelines factors more or less weight than other § 3553(a) factors.   *Id*.   If the Court decides an outside-Guidelines sentence is warranted, the Court must ensure the justification is sufficiently compelling to support the degree of variance.   *Id*.   And finally, once a sentence is selected, the Court must explain it sufficiently to permit meaningful appellate review.   *Id*. at 992.

Factors to consider under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to provide just punishment for the offense; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to protect the public from further crimes of the defendant; and the need to provide the defendant with needed training, care, or treatment.

**Government's Sentencing Memorandum**                                                    **Page 4**

## V.    PLEA AGREEMENT AND RECOMMENDED SENTENCE

### a.  RELEVANT CONDUCT

The parties agree that the defendant is responsible for 1,472 grams of actual methamphetamine and 1,645 grams of a mixture or substance containing a detectable amount of methamphetamine.   Plea Agreement ¶ 6.   PSR ¶ 11.

### b.  MANDATORY MINIMUM SENTENCE

The parties agree that the 1,472 grams of pure methamphetamine possessed by the defendant triggers a mandatory minimum sentence of ten years pursuant to 21 U.S.C. §841(b)(1)(A)(viii).   Plea Agreement ¶ 3.

### c.  SAFETY VALVE

The parties agree the defendant does qualify for a two-level reduction based upon the statutory criteria outlined in 18 U.S.C. 3553(f)(1-5) and U.S.S.G. §5C1.2(a)(1-5).   Plea Agreement ¶ 9.   PSR ¶ 18.

### d.  ACCEPTANCE OF RESPONSIBILITY

The government recommends a three-level reduction to recognize defendant's acceptance of responsibility pursuant to § 3E1.1.   Plea Agreement ¶ 7.   PSR ¶ 24-25.

### e.  GUIDELINE CALCULATION

The government agrees with the PSR that defendant has a criminal history category level I pursuant to §4A1.1 based on a lack of a prior criminal history. PSR ¶29.   The government further agrees with the PSR that the Base Offense Level is 36 for a quantity of pure methamphetamine exceeding 500 grams or more of actual methamphetamine.   PSR ¶ 17.   Plea Agreement ¶ 6. Following a two-level reduction for safety-valve eligibility and a three-level reduction for acceptance of responsibility, the government concurs with the PSR that the Total Offense Level is

31.   PSR ¶ 26.   Therefore, the government calculates a guideline range of 108-135 months based on a Total Offense Level 31 and a Criminal History Category I.

### VI.   THE UNITED STATES' RECOMMENDED SENTENCE

The government respectfully recommends that the Court impose a sentence of 108 months' imprisonment.   The defendant engaged in a significant methamphetamine trafficking operation. The defendant owned a vehicle equipped with a modified trap, which is designed to conceal and smuggle narcotics and other contraband.   The weight of the methamphetamine was significant. The defendant possessed 1,472 grams of pure methamphetamine.   The United States Sentencing Guidelines proscribe a mandatory sentence of not less than ten years' imprisonment if a defendant possessed 50 grams of pure methamphetamine.   21 U.S.C. §841(b)(1)(A)(viii).   The defendant's willingness and ability to possess and transport a quantity 29 times greater than the mandatory minimum threshold is significant.   It suggests defendant is active and well-connected within the drug trafficking community.   Furthermore, the defendant possessed methamphetamine that was 89.5% pure.   The purity of the seized methamphetamine again suggests the defendant's ability to possess high-quality methamphetamine not typically available outside the community of active drug trafficking organizations.

The defendant will argue for a sentence of 87 months' imprisonment.   The basis for the defendant's request is two-fold.   First, the government initially prepared a plea letter outlining an agreement that contemplated a Base Offense Level of a 34 based on the 1,645 grams of a mixture containing methamphetamine.   The government mailed the plea agreement premised on a mixture calculation. Shortly after mailing the plea letter, the government recognized that the 1,472 grams of pure methamphetamine would trump the mixture calculation and result in a Base Offense Level of 36.   The government subsequently contacted defense counsel to revise the plea letter.

**Government's Sentencing Memorandum**                                                   **Page 6**

Defense counsel advised that he had discussed the plea letter with the defendant, but acknowledged no formal acceptance of the offer had occurred.   Based upon the unique circumstances, the government and defense counsel agreed to a modification of the original plea letter, in which the government would seek a sentence predicated on a Base Offense Level of a 36 and the defendant could seek a sentence predicated on the mixture calculations and a Base Offense Level of 34.   Furthermore, the government and the defendant agreed that the defendant could rely upon 18 U.S.C. §3553(a) factors to seek a sentence of 87 months' imprisonment.

In conclusion, it is expected the parties will seek a range of 87-108 months' imprisonment. It is the government's position that the 108 months' imprisonment accurately reflects the nature and circumstances of the offense as evidenced by the significant weight and purity of the methamphetamine trafficked by the defendant.   Furthermore, the government argues that the defendant's lack of criminal history is given due consideration by his classification as a criminal history category level I.   Additionally, the defendant will receive a significant two-level reduction below the mandatory minimum based on the criteria outlined in the safety valve eligibility pursuant to 18 U.S.C. 3553(f)(1-5) and U.S.S.G. §5C1.2(a)(1-5).

## VII.   CONCLUSION

The defendant engaged in a significant drug trafficking operation.   The weight and purity of methamphetamine seized suggest significant involvement in an active trafficking organization. The Base Offense Level of a 36 is designed to capture a category of defendants who possess 500-1500 grams of pure methamphetamine.   The defendant's possession of 1,472 grams is at the very high-end for a Base Offense Level of 36 and the defendant should be sentenced accordingly. The defendant's lack of a criminal history is taken into account by the sentencing guidelines based on his classification as a criminal history category level I.   The lack of additional aggravating

factors allow the defendant to be safety-valve eligible for an additional two-level reduction.   It is the government's position that the proposed recommendation addresses the nature and seriousness of the offense and provides just punishment to the defendant for his actions. It is also promotes respect for the law and affords adequate deterrence to criminal conduct.   For the reasons set forth above, the government urges the Court to find that a sentence of 108 months' imprisonment, followed by five years of supervised release, and a fee assessment of $100 satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

DATED this 5th day of September, 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

_s/ Steven T. Mygrant_
STEVEN T. MYGRANT, OSB #03129
Special Assistant United States Attorney
(503) 655-8431

**Government's Sentencing Memorandum**                                        **Page 8**